UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Melvin J. Herring,<br><br>                    Petitioner,<br><br>          v.<br><br>Mark Miller**,**<br><br>                    Respondent. | MEMORANDUM DECISION<br><br>No. 22-cv-6693 (NRM) |

NINA R. MORRISON, United States District Judge:

Now pending before this Court is Melvin J. Herring's petition for a writ of habeas corpus, in which he challenges his three 2017 convictions for robbery in the first degree and one conviction for attempted robbery in the first degree. The crimes for which Herring was convicted of arise from a one-week streak of robberies in Suffolk County in September 2016, in which different retail business were held up by an individual who appeared to have a firearm. Herring was arrested after the final (failed) robbery on September 26, 2016; he subsequently signed statements confessing to all four crimes after being interrogated by Suffolk County detectives.

Herring was convicted on all four counts by a jury in Suffolk County in 2017. He was sentenced to an indeterminate sentence of twenty years to life imprisonment as a persistent violent felony offender.

Proceeding *pro se*, Herring filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("the Petition"). *See* ECF No. 1. Herring argues that, in 2017, (1) court officers improperly communicated with deliberating jurors resulting

in an unfair trial, (2) the trial court improperly deemed him a persistent violent felony offender, (3) he was denied a fair and unbiased jury due to comments the prosecutor made that might have revealed his custodial status during voir dire, and (4) the statements he made and signed during his interrogation on the day of his arrest should have been suppressed as involuntary. *See* Petition at 1–31.

After careful consideration of the underlying record and each of the claims presented by Herring, for the reasons that follow, the Petition is denied.

## BACKGROUND[1]

### I.    Herring's Arrest

On September 26, 2016, Suffolk County Detective Martin Cummings responded to a 911 call regarding an attempted robbery at Battlegrounds Videos. ECF No. 8 at 62.  Detective Cummings reviewed security footage of the robbery, which depicted a man pointing what appeared to be a revolver towards the owner of the store.  ECF No. 8 at 62–63.  The owner then produced his licensed handgun and the suspect backed out of the store without obtaining any money.  ECF No. 8 at 63.  The owner of the store provided Detective Cummings with the suspect's license plate number.  ECF No. 8 at 64.

Back at the precinct, Detective Cummings learned that the registered owner of the vehicle related to the suspect's license plate was Melvin Herring.  ECF No. 8 at 65.  Upon seeing Herring's picture in the Department of Motor Vehicles online

---

[1] Pincites refer to page numbers generated by CM/ECF, and not the document's internal pagination.

database, Cummings concluded that Herring was "the person [he] had seen in the Battlegrounds video." ECF No. 8 at 65–66. Additionally, referencing photos from other similar robberies identified as being part of a county-wide crime pattern, Cummings identified Herring as a potential suspect in those robberies. ECF No. 8 at 66.

Approximately three hours after the attempted robbery at Battlegrounds Video, Detective McGuire, Detective Gualtieri, Detective Dunleavy, and Detective Sergeant Lamb arrested Herring outside of his residence. ECF No. 8 at 12–13. Herring was taken back to the precinct and placed in an interview room. ECF No. 8 at 14–16.

At the precinct, Herring was placed in a lineup; the owner of Battlegrounds Video positively identified Herring as the attempted robbery suspect of his store earlier in the day. ECF No. 8 at 84–86. In interviews with four Detectives — Cummings, Arnold, Suppa, and Friedlander — Herring then admitted to using a plastic gun to rob various shops in order to support his drug use. ECF No. 8 at 98 (Detective Cummings testifying that Herring admitted to and signed an admission to the attempted robbery at Battlegrounds Video); ECF No. 8 156–57 (Detective Arnold producing a statement where Herring admitted to robbing a GameStop on September 24, 2016); ECF No. 8 at 197–200 (Detective Suppa recounting a statement from Herring that he robbed a store a week prior and indicated on pictures of a September, 20, 2016 robbery at a beauty store that the suspect was himself); ECF No. 8 at 226–29 (Detective Friedlander testifying that Herring identified himself in photos of a

robbery earlier in the day at Fifty Percent of Cards). Herring was eventually charged with three counts of robbery in the first degree and one count of attempted robbery in the first degree. ECF No. 8 at 295–97.

## II.    Herring's Complaint Against Suffolk County Officers

A few weeks after his arrest, Herring filed a complaint with the Suffolk County Police Internal Affairs Department. *See* ECF No. 8-1 at 195–98. In it, he alleged that after being arrested and placed in the interview room, his request for an attorney was ignored, he was not informed of his *Miranda* rights, and he was beaten with a collapsable baton. ECF No. 8-1 at 195–97. He also alleged that when he was taken to the hospital the next day because of his chest pains, he did not tell the attending doctor about the abuse because there was a police officer there the entire time who did not leave his sight. ECF No. 8-1 at 197. Additionally, he asserted that his appointed counsel never requested photos of the black and blue marks on his arm. ECF No. 8-1 at 198.

In its briefing, the Suffolk County District Attorney's office claims that on April 9, 2018, all of Herring's claims were investigated and the officers accused of misconduct were either exonerated, or the claims were deemed unfounded or unsubstantiated. Resp't Mem. at 28, ECF No. 7.

On October 6, 2017, Herring filed a civil rights lawsuit against, *inter alia*, the Suffolk County Police Department and Brookhaven Memorial Hospital in the Eastern District of New York pursuant to 42 U.S.C. § 1983. *See* Complaint, *Herring v. Suffolk County et al.*, 17-cv-5904 (MKB) (SIL) (filed October 6, 2017), ECF No. 1. In it, he

alleges essentially the same police misconduct as in his complaint to the Internal Affairs Department. *See id.* at 6–25. On February 28, 2023, the lawsuit was dismissed after it was settled. *See* Stipulation and Order Dismissing Case, *Herring v. Suffolk County et al.*, 17-cv-5904 (MKB), ECF No. 147. The terms of the settlement were not listed in the parties' stipulation of dismissal, and Herring has provided no further information in his habeas petition.

## III.    Pretrial Hearing

On May 10 and 11 of 2017, the trial court held a consolidated pretrial *Dunaway*, *Mapp*, *Huntley*, and *Wade* hearing.[2] In it, Herring sought to suppress, *inter alia*, the written statements he signed implicating himself in each of the charged robberies. *See* ECF No. 8 at 1–254.

At the hearing, the court heard testimony from various detectives assigned to investigate one or more of the robberies at issue. Detective McGuire, who investigated the robbery at Battlegrounds, testified that after Herring's arrest, he was placed in an interview room in the precinct and handcuffed to a long chain. ECF No. 8 at 17–18. When she and Detective Gualtieri entered the interview room, she read Herring his *Miranda* rights using a card, which he initialed, agreeing to speak to the investigators without an attorney present. ECF No. 8 at 17–19. On cross-

---

[2] In New York State, a *Dunaway* hearing determines whether a statement obtained from a defendant should be suppressed because the arrest lacked probable cause; a *Mapp* hearing determines whether physical evidence should be suppressed; a *Huntley* hearing determines whether a defendant's statement should be suppressed because it was not made voluntarily; and a *Wade* hearing determines the admissibility of an identification of a defendant by a witness. *See Parham v. Griffin*, 86 F. Supp. 3d 161, 166 n.1, n.4–6 (E.D.N.Y. 2015) (WFK).

examination, she denied that Herring ever informed her that he had a heart condition, that he was having chest pains, that he wanted to go to the hospital, or that he asked for an attorney. ECF No. 8 at 43–44. She also denied that she ever saw Detective Gualtieri enter the room with a collapsable baton or hit Herring with a baton. ECF No. 8 at 47. Lastly, she denied that she ever said to Herring "[y]ou got no fucking win [sic]; you're the criminal, you got the record, no one will believe you[.]" ECF No. 8 at 49.

Detective Cummings, also assigned to the Battlegrounds robbery investigation, testified that after Herring's arrest, he introduced himself to Herring, reminded him that he had been advised of his *Miranda* rights by Detective McGuire, and asked if he would be willing to speak to him. ECF No. 8 at 69–70. According to Detective Cummings, Herring indicated that he was willing to speak with him. ECF No. 8 at 70. Herring eventually signed a written statement in which he admitted to attempting to rob Battlegrounds earlier that day with a plastic gun because he needed money to buy heroin. ECF No. 8 at 97–99. On cross-examination, Detective Cummings denied that Herring asked for an attorney, told the detectives that he was having chest pains, or asked to go to the hospital. ECF No. 8 at 123. Cummings also denied telling Herring that if he signed the statement, he would be taken to the hospital. ECF No. 8 at 133.

Detective Arnold investigated the September 24 robbery at the GameStop. ECF No. 8 at 141. He testified that upon entering the interview room, he reaffirmed with Herring that he had been read his *Miranda* rights and initialed the rights card.

ECF No. 8 at 151. He also testified that Herring did not appear to be in physical distress or intoxicated. ECF No. 8 at 155. Detective Arnold had Herring sign his name to a written statement, confessing that two days prior he had robbed a GameStop on Montauk highway with a black toy gun. ECF No. 8 at 156.

Detective Suppa had been assigned to the investigation of the September 20 robbery at the Royal Beauty Supply. ECF No. 8 at 179. He and Detective Friedlander interviewed Herring together, and upon entering the interview room, he re-read Herring his *Miranda* rights. ECF No. 8 at 189–90. Like the detectives who testified before him, Detective Suppa denied that Herring complained of any medical issues or that he appeared to be in medical distress. ECF No. 8 at 195. Detective Suppa read into the record a statement which Herring signed, recounting that on "[o]ne day last week" he went into a store, though he was high at the time and could not recall where the store was. ECF No. 8 at 197. Herring's statement indicated that he did not remember robbing the store, but upon being shown the photos of the robbery at Royal Beauty Supply, he acknowledged the suspect was him. ECF No. 8 at 197.

Detective Friedlander investigated the robbery of Fifty Percent Cards on September 26 (the same day as the Battlegrounds attempted robbery). ECF No. 8 at 211. He also testified that Herring did not appear intoxicated or to be in physical distress. ECF No. 8 at 225. According to Detective Friedlander, while Herring could not remember much about the day or specifically robbing Fifty Percent Cards, upon being shown surveillance photos of the robbery, Herring agreed that it was him in the photos. ECF No. 8 at 226–27. Herring then signed a written statement indicating

7

that after the death of his cousin, he began using heroin again, and had been employing a toy gun to "show people and get money in stores."  ECF No. 8 at 231.

Following the hearing, the trial court denied Herring's motion to suppress his statements.  *See People v. Herring*, 138 N.Y.S.3d 147, 148 (N.Y. App. Div. 2020) (affirming the trial court's denial of Herring's motion to suppress).

## IV.  Trial

### a. Voir Dire

Herring's case proceeded to trial in November of 2017.  *See* ECF. No. 8, 289–1201.  On the third day of *voir dire*, the prosecution made the following comment to a juror in front of one of the jury panels:

> We're going to talk ab[o]ut that.  The presumption of innocence.  The presumption of innocence [as to] this defendant as he stands right now, if I quit right now, he would be released, he can walk right out of the courtroom, alright.  And that is his presumption of innocence.  And until I prove every element beyond a reasonable doubt, and that's a heavy one, he is free to go, he's innocent.

ECF No. 8 at 531.  Defense counsel then called for a sidebar, and asked for the entire panel to be dismissed.  ECF No. 8 at 543.  Defense counsel argued that because the prosecutor used the term "released," she implied that Herring was currently in custody.  ECF No. 8 at 543.  In response, the court said:

> Okay.  That didn't strike me at the time, your interpretation of what she said.  Release could be released from the charges.  It could be many other things.  That's what you take it to mean.  But I didn't catch that.  When she said it[,] I thought just released from the obligation to answer these charges or they would be dismissed against him.  I'm going to deny the application. . . . I also say there's no outward indication that Mr. Herring is in custody.  He's wearing street clothes.  He's not in leg irons . . . .

ECF No. 8 at 544–45. While the jurors selected from this particular panel were alternate jurors, ECF No. 8 at 493, one of them ended up serving on the petit jury after the original juror number 8 was discharged, *see* ECF No. 8 at 922.

### b. Evidence at Trial

In the instant petition, Herring does not challenge the sufficiency of the evidence presented against him at trial. *See* Petition. Therefore, this Court will not detail the evidence presented at trial, except to note that the detectives testified consistently with their testimony in the suppression hearing as outlined *supra*. However, because Herring challenges the fact that the jury was shown a firearm during deliberations — discussed *infra* — the Court will review said firearm's admission into evidence, as well as defense counsel's applications to reopen the suppression hearing.

During his direct examination, Detective Cummings was asked if he could identify a firearm from a photograph that was taken during the search of Herring's vehicle. ECF No. 8 at 781. Detective Cummings indicated that it was a "Smith & Wesson, probably .38 special." ECF No. 8 at 782. Detective Cummings testified that he located the weapon in the center console of Herring's vehicle, ECF No. 8 at 780, and that the gun the prosecutor introduced in evidence as "People's 22" was the same weapon he recovered, ECF No. 8 at 784–85. In a brief *voir dire*, defense counsel established that the plastic safeguard on the weapon introduced in court was a different plastic safeguard than the one Detective Cummings had placed on the weapon. ECF No. 8 at 785–86. Additionally, it was elicited that the weapon was

tested, but not while it was in the possession of Detective Cummings. ECF No. 8 at 786. Defense counsel then objected to the weapon's admission into evidence as the proper chain of custody had not been established. ECF No. 8 at 786. The court admitted the weapon into evidence subject to connection. ECF No. 8 at 786–87. After additional testimony regarding chain of custody, the prosecution again moved the gun into evidence, and the court accepted it without objection. ECF No. 8 at 827–28.

Herring's counsel three times petitioned the court to reopen the pretrial suppression hearing; all petitions were denied. First, after Detective McGuire's trial testimony, Herring's counsel argued that her testimony was inconsistent with her hearing testimony, because at trial she testified that she did obtain information about Herring's background prior to arresting him, whereas at the hearing she "adamantly" denied doing so. ECF No. 8 at 692. Second, during witness Salvador's testimony defense counsel argued that the pretrial hearing should be reopened because she testified to a fact inconsistent with Detective Friedlander's testimony at the hearing. ECF No. 8 at 867 (defense counsel pointing out that while Salvador just testified that a translator never read her statement back to her in Spanish, Detective Friedlander had claimed otherwise at the hearing). Third, defense counsel asked to reopen the hearing because at trial Detective Suppa testified that he spoke to Herring at 9:51 p.m., but at the hearing he testified that he had not advised Herring of his rights until 9:55 pm. ECF No. 8 at 985.

Herring also testified at trial. He claimed that when he was put in the interview room the day he was arrested, he told the detectives that he "didn't really

want to talk to them without an attorney present." ECF No. 8 at 1057. After that, he stated that an officer came into the room with a collapsable baton and struck him many times on his left side. ECF No. 8 at 1058. According to Herring, after he was beaten, the officer came back into the room with pictures from the robbery and asked him why he did it. ECF No. 8 at 1060. Herring again asked for an attorney, and the officer got upset and left the room. ECF No. 8 at 1060–61. Herring testified that the officer then reentered the room with the collapsable baton, and at that Herring "just said okay, okay, I did it, I did it." ECF No. 8 at 1061. Herring also claimed that he told Detective McGuire that he was having chest pains and needed to go to the hospital, and was told that if he just signed the paperwork, he would get medical attention. ECF No. 8 at 1061–63.

### c. Jury Deliberations

After the close of evidence, the court confirmed that neither party had any exception to the court's proposed jury charge. ECF No. 8 at 1147. Relevant to the instant petition, the court instructed the jury that exhibits which were admitted into evidence "are available for your review upon request." ECF No. 8 at 1150.

The next day, with all counsel present, the court informed the parties that, "as a preliminary matter, we have two jury notes." ECF No. 8 at 1195. The first note indicated that the jury wanted to see the weapon that was introduced in evidence. ECF No. 8 at 1195. The court informed the defense and prosecution that the weapon was "shown to [the jury] by the court officers." ECF No. 8 at 1195. Neither the prosecution nor defense objected to the fact that the court had disposed of the jury

note and shown the jury the weapon previously admitted into evidence without giving the parties an opportunity to object.  ECF No. 8 at 1195.

The second note read: "[w]e have reached a verdict."  ECF No. 8 at 1195.  On November 16, 2017, Herring was found guilty of all four counts: three counts of robbery in the first degree, in violation of New York Penal Law section 160.15(4), and one count of attempted robbery in the first degree, in violation of New York Penal Law sections 160.15(4) and 110.00.  ECF No. 8 at 1197–98.

## V.  Sentencing

At sentencing, defense counsel challenged Herring's status as a persistent violent felony offender ("PVFO").  ECF No. 8 at 1203.  The PVFO status is defined by New York Penal Law section 70.08, which provides that "[a] persistent violent felony offender is a person who stands convicted of a violent felony offense as defined in subdivision one of section 70.02 . . . after having previously been subjected to two or more predicate violent felony convictions as defined in paragraph (b) of subdivision one of section 70.04 of this article."  N.Y. Penal Law § 70.08(1)(a).  For a person convicted of a class B felony (robbery in the first degree is a class B felony), the minimum period of imprisonment after being found to be a persistent violent felony offender is twenty years.  *Id.* §§ 70.08(3)(b), 160.15.

The prosecution relied on three previous convictions to establish Herring's persistent violent felony offender status: a 1976 robbery in the second degree, a 1989 robbery in the first degree, and a 1996 robbery in the first degree.  ECF No. 8 at 1210.  Defense counsel argued that the court should not be allowed to rely on the 1976 or

the 1989 convictions because the prosecution did not give them any transcripts from the hearings to indicate that Herring was advised at those sentencings that they would count towards his status as a persistent violent felony offender.  ECF No. 8 at 1203–04.  Herring's counsel further argued that they could find no evidence that at the 1996 sentencing Herring's then-counsel was given "any indication" that at the 1976 and 1989 sentencings, he was informed that they would count towards his status.  ECF No. 8 at 1204.  Upon questioning by the court, Herring's counsel confirmed that he was "not challenging the fact that Melvin Herring was convicted on all these other occasions, but [that] he wasn't properly advised of the consequences of being called a persistent violent felony offender.  [That] [h]e didn't get that admonition . . . ."  ECF No. 8 at 1211–12.

The prosecution responded by pointing out that in the sentencing hearing for his 1996 conviction, Herring's then-attorney told the court that he admitted he was a persistent violent felony offender, and that he was not challenging the constitutionality of the 1976 or 1989 convictions.  ECF No. 8 at 1208.  This admission in 1996, the prosecution argued, precluded him from making any argument now that the 1976 and 1989 convictions were not constitutionally obtained and that he is not a persistent violent felony offender.  ECF No. 8 at 1208.  The prosecution also submitted to the court a certified copy of his criminal history showing the fingerprints taken at the arrests that led to his 1976 and 1988 convictions matched each other, as well as a certified copy of his 1996 conviction.  ECF No. 8 at 1210.

The court found that Herring was properly labeled a PVFO because "the People have conclusively beyond a reasonable doubt showed that [Herring] was informed by Judge Mullen on April 12th of 1996 that he was being treated as a prior violent felony offender." ECF No. 8 at 1212. The court then proceeded to sentence Herring to the minimum of 20 years to life incarceration on all three counts of robbery in the first degree, and the minimum of 16 years to life incarceration on the count of robbery in the second degree — all sentences to run concurrently. ECF No. 8 at 1226.

## VI.   Post-Conviction

### a. Direct Appeal

Herring appealed his conviction and sentence to the New York Appellate Division, Second Department. *See* ECF No. 8-1 at 1–60. He sought relief on five grounds: (1) that the court officers improperly communicated with the jurors and did not give him a chance to be heard when the jury requested to examine the gun; (2) that he was deprived of his rights under New York Criminal Procedure Law § 400.16 (the procedure for establishing persistent violent felony offender status) when he was deemed a persistent violent felony offender by the court; (3) that the statements made by the prosecutor in *voir dire* amounted to prosecutorial misconduct, as they implied he was incarcerated and deprived him of a fair trial by an unbiased jury; (4) that the statements he signed during his police interrogation should have been suppressed as they were coerced and taken in violation of his right to counsel; and (5) that he was not proven guilty beyond a reasonable doubt as the prosecution failed to rebut his

14

contention that he used a toy gun and failed to prove his intent to commit the charged acts as he was "so stoned on heroin." ECF No. 8-1 at 1–60.

On December 30, 2020, the Second Department affirmed Herring's conviction in full. *See People v. Herring*, 138 N.Y.S.3d 147 (N.Y. App. Div. 2020). First, it determined that the evidence was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Id.* at 148. The court found that "the defendant made an intelligent, knowing, and voluntary waiver of his *Miranda* rights, and . . . his statements to the police were not a product of coercion. [Additionally], [t]he County Court providently exercised its discretion in denying the defendant's applications, made during the trial, to reopen the suppression hearing." *Id.* (citation omitted). The court also found that because the jury note requesting to see the weapon "was ministerial in nature," it "did not implicate the procedure set forth by the Court of Appeals in *People v. O'Rama*, which applies where the court receives a *substantive* written jury communication." *Id.* at 148–149 (citation omitted).[3] The court also agreed with the trial court that "the defendant did not adduce proof sufficient to support his claim that his 1996 violent felony conviction was unconstitutionally obtained" and he was "estopped from challenging the constitutionality of his 1976 and 1989" convictions as they were not challenged during his 1996 sentencing. *Id* at 149.

---

[3] The process in *O'Rama* referred to is the requirement that, upon the reception of a jury note, the note should be read in the presence of counsel, and "counsel should be afforded a full opportunity to suggest appropriate responses." *People v. O'Rama*, 579 N.E.2d 189, 192 (N.Y. 1991).

Lastly, the court stated that "[t]he defendant's remaining contention is without merit." *Id.*

Herring filed for leave to appeal the Appellate Division's decision and order. ECF No. 8-1 at 148 ("Leave to Appeal"). On March 29, 2021, Judge Stein denied Herring's application. *See People v. Herring*, 167 N.E.3d 1280 (N.Y. 2021).

### b. State Collateral Attack

On March 24, 2022, Herring, proceeding *pro se*, filed a motion pursuant to New York Criminal Procedure Law §§ 440.10 and 440.20 to set aside his sentence and vacate his judgment. ECF No. 8-1 at 170–73. In it, he alleged that (1) he generally received ineffective assistance of counsel as counsel failed to investigate the police misconduct he claimed occurred during his questioning; (2) the prosecution failed to provide him *Brady* material concerning internal investigations of police misconduct; (3) the prosecution failed to comply with its obligations under New York Criminal Procedure Law § 245.20, obligating them to turn over evidence of police misconduct when they received Herring's complaint alleging police brutality; and (4) the court did not follow the procedures of New York Criminal Procedure Law §§ 400.15 and 400.16 in adjudicating him a persistent violent felony offender, as it failed to ask him if he wished to controvert this status designation. ECF No. 8-1 at 170–73. After his motion was denied on July 12, 2022, Herring requested leave to appeal this denial to the Appellate Division. ECF No. 8-1 at 240. This application was denied on November 18, 2022. ECF No. 8-1 at 408.

### a. The Instant Petition

Proceeding *pro se*, Herring timely filed the instant petition pursuant to 28 U.S.C. § 2254 on October 31, 2022. *See* Petition. Respondent filed a memorandum in opposition to the Petition on January 10, 2023. *See* Resp't Mem. On October 7, 2024, in order to more fully evaluate Herring's claim that he was improperly sentenced as a persistent violent felony offender, this Court directed Respondent to attempt to obtain the sentencing transcripts from Herring's 1976 and 1988 convictions. *See* Order dated 10/7/2024. Respondent thereafter informed the Court that it had contacted both Bronx County Supreme Court and New York County Supreme Court in an effort to obtain the transcripts, but were informed that due to the age of the cases, no transcripts were available. *See* ECF Nos. 9, 10.

Herring makes four claims in support of his instant § 2254 petition: (1) that the court officers improperly communicated with the jury and did not give him the right to be heard before responding to the jury note; (2) that he was "deprived of his statutory and constitutional rights under CPL § 400.16 when sentenced as a persistent violent felony offender"; (3) that he was denied a fair and unbiased jury as a result of the prosecutor's comments during *voir dire*; and (4) that his statements to police were unconstitutionally obtained and should have been suppressed. *See* Petition at 1–33. For the reasons discussed below, Herring is not entitled to habeas relief on any of these grounds.

## DISCUSSION

### I. Federal Review of State Convictions

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court . . . and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim."  *Ramirez v. Att'y Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276–77 (1971)).

Federal review of state convictions is further constrained by the procedural default doctrine.  Federal courts generally "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state law ground that is independent of the federal question and adequate to support the judgment."  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citation omitted).  A state court's "reliance on state law must be clear from the face of the opinion" to satisfy the "independent" requirement.  *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (internal quotation marks omitted).  To satisfy the "adequate" requirement, a state court decision must be based on a state rule that is "firmly established and regularly followed" by courts of that state.  *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits unless the petitioner demonstrates (1) "cause for the default and actual prejudice as result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 724. To establish "cause," a petitioner must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986). To establish prejudice a petitioner is required to demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness. *James v. Mazzuca*, 387 F. Supp. 2d 351, 360 (S.D.N.Y. 2005) (GBD) (FM). Finally, to establish a fundamental miscarriage of justice, a petitioner must prove that they are "actually innocent." *Id.* (quoting *Aparico v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)).

Even where a federal court is authorized to reach the merits of a claim, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrows the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*; *see Harrington v. Richter*, 562 U.S. 86, 97–98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).

Thus, when a federal court adjudicates a habeas claim on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Similarly, "[a]n unreasonable application of" federal law occurs if the state court's decision "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," *id.* at 413, or if it "fails to extend a principle of clearly established law 'to situations which that principle should have, in reason, governed.'" *Tueros v. Greiner*, 343 F.3d 587, 591 (2d Cir. 2003) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 45 (2d Cir. 2002)). However, for a petitioner to obtain habeas relief, there must be "no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102.

## II. Analysis

As discussed *supra*, Herring makes four claims in support of his Petition: (1) that the court officers improperly communicated with the jury and did not give him the right to be heard before responding to the jury note; (2) that he was "deprived of his statutory and constitutional rights under CPL 400.16 when sentenced as a persistent violent felony offender"; (3) that he was denied of a fair and unbiased jury as a result of the *voir dire* proceedings; and (4) that his statements to police officers after his arrest should have been suppressed. *See* Petition at 1–33.

Respondent does not dispute that Herring has exhausted his state remedies to all four claims. The Court agrees. *See* 28 U.S.C. § 2254(b)(1)(A). Herring raised all four claims in his direct appeal to the Appellate Division and his application for leave to appeal to the Court of Appeals. The Appellate Division denied the claims on the merits, *Herring*, 138 N.Y.S.3d at 147–49 , and the Court of Appeals denied leave to appeal, *Herring*, 167 N.E.3d at 1280.

### A. The Jury Note

Herring's first challenge to his conviction under § 2254 is procedurally defaulted. Alternatively, if the claim were not procedurally defaulted, the claim fails on its merits.

Herring's challenge is that "[c]ourt officers improperly communicated with deliberating jurors and denied defendant [his right] to be heard before responding to [a] jury note, and [to] be present during all phases." Petition at 5. Herring is specifically referring to the note which asked to see the weapon in evidence. *See id.*

at 6.  The court, without discussing the note with or informing the parties, authorized a court officer to show the jury the revolver.  *See* ECF No. 8 at 1195.

Herring argues that this action by the court was a violation of his rights under the Fourteenth Amendment.  Petition at 7–8.  Specifically, he focuses his argument on the alleged violation of New York Criminal Procedure Law ("CPL") §§ 310.10 and 310.30.  *Id.* at 7.  Section 310.10 provides that a court officer may not communicate with the jurors except "when performing administerial duties respect to the jurors."  N.Y. Crim. Proc. Law § 310.10(1).  Section 310.30 states that upon a jury's request for trial evidence, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper."  N.Y. Crim. Proc. Law § 310.30.  Herring argues that these procedures were not followed and, for that reason, he claims his Fourteenth Amendment rights were violated.  Petition at 7–8.

Respondent argues that the Appellate Division was correct in dismissing this claim because the production of the evidence to the jury was "a ministerial task and [did] not implicate [the] defendant's substantive right to be present."  Resp't Mem. at 11.  Respondent contends that the state court findings were proper as they followed New York law *and* "[t]here is no constitutional right [for a defendant] to be present when presence would be useless.'"  *Id.* at 12 (quoting *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002)).

When the Appellate Division denied this aspect of Herring's post-conviction appeal, it reasoned:

> [T]he jury's note requesting to view a trial exhibit, which had been admitted into evidence, was ministerial in nature (*see People v. Swick*, 158 A.D.3d 1131, 1132 [2018]). Therefore, the note did not implicate the procedure set forth by the Court of Appeals in *People v. O'Rama* (78 N.Y.2d 270, 277–278 [1991]), which applies where the court receives a *substantive* written jury communication (*see People v. Nealon*, 26 N.Y.3d 152, 161 [2015]).

*Herring*, 138 N.Y.S.3d at 148–49. *See also People v. Zelaya*, 47 N.Y.S.3d 417, 418 (N.Y. App. Div. 2017) (holding that "the ministerial act of delivering [an] exhibit" outside of the parties' presence "did not constitute a mode of proceedings error or deprive the defendant of a fair trial"). Because Herring's challenge to the court's delivery of the weapon to the jury is based on CPL §§ 310.10 and 310.30, and in affirming his conviction on this ground, the Appellate Division's "reliance on state law [is] clear from the face of the opinion," Herring's claim is procedurally barred. *Fama*, 235 F.3d at 809 (internal quotation marks omitted).

However, reading Herring's *pro se* petition liberally, he could be arguing that the Appellate Division's application of New York State law ran contrary to clearly established federal law. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (internal quotation marks omitted)). Herring claims that his "statutory and constitutional rights were [not] safeguarded during [a] crucial step of [the] jury trial." Petition at 7.

It is true that "a well-settled principle of constitutional law [is] that a criminal defendant has the right to be present at all stages of the trial where his absence might

frustrate the fairness of the proceedings." *Cohen v. Sendkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Crim. P. 43(a)(2) ("[T]he defendant must be present at . . . every trial stage, including jury impanelment and the return of the verdict . . . ."). The Second Circuit has held that "[t]he Sixth Amendment and Rule 43 . . . require that ordinarily a message from the jury be answered in open court and that counsel be given the opportunity to be heard before the trial judge responds to the jury's questions." *United States v. Henry*, 325 F.3d 93, 105 (2d Cir. 2003) (quoting *United States v. Robinson*, 560 F.2d 507, 516 (2d Cir. 1977) (en banc)). However, the Supreme Court has recognized that "a violation of Rule 43 may in some circumstances be harmless error." *Rogers v. United States*, 422 U.S. 35, 40 (1975).

Judge Woods in the Southern District of New York was presented with this very same situation, where a state trial court responded to a jury note by sending the jurors an exhibit without reconvening the parties. *See Feliciano v. Lee*, 18-cv-9591 (GHW), 2020 WL 5076865, at *9 (S.D.N.Y. Aug. 26, 2020). The court denied habeas relief, noting that while the Supreme Court has found in some substantive situations a trial judge responding *ex parte* to a jury note could constitute error, "there is no Supreme Court case establishing [a defendant's] right to respond to a jury note in circumstances like those presented here." *Id.* at *10. This Court agrees, and finds that the trial court's actions in Herring's case was not contrary to any clearly established law reflected in the decisions of the United States Supreme Court.

Even assuming that the court violated Herring's Sixth Amendment right in sending the weapon back without consulting the parties, "any violation of this right is subject to harmless error review." *Silva v. Capra*, 15-cv-9032 (GHW) (SN), 2016 WL 5793977, at *9 (S.D.N.Y. Aug. 30, 2016), *report and recommendation adopted*, 2016 WL 5719797 (S.D.N.Y. Sept. 29, 2016); *see also United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994) (noting that noncompliance with the procedure set out to respond to jury notes "does not mandate reversal unless prejudice is shown"). As discussed *supra*, the weapon was admitted into evidence without any objection from the defense, and the jury was told before they went into deliberations that they would be able to examine any objects admitted into evidence. Herring has not identified what he or his attorney could or would have done had they been informed of the jury note prior to the weapon being shown to the jury. And perhaps most importantly, he has he pointed to any actual prejudice he suffered as a result of the trial court's actions. Thus, Herring is not entitled to habeas relief on this ground.

## B. Persistent Violent Felony Offender Status

Herring's next alleged ground for habeas relief is that he was "deprived of his statutory and constitutional rights under CPL 400.16 when sentenced as a persistent violent felony offender." Petition at 17. Herring argues that, while he did accept a plea and acknowledge his PVFO status in 1996, this earlier determination was itself unconstitutional. He argues that his PVFO status at the time of sentencing in the instant case was due to ineffective assistance of his counsel in 1996, because that counsel did not inform him that the prosecution should not have been able to use his

1989 conviction to enhance his 1996 sentence.  *See* Petition at 18.  He claims that when he accepted the 1989 plea — which gave him his second predicate violent felony, designating him a PVFO — he did so without any counsel present and without the 1989 court informing him that the plea would subject him to this status.  *See id*. Herring contends that because, under New York law, "[a] previous conviction. . . which was obtained in violation of the rights of the defendant . . . must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction," his 1996 PVFO designation, and therefore his 2018 PVFO designation, was improper.  N.Y. Crim. Proc. Law § 400.15(7)(b).

This ground for habeas relief is procedurally defaulted.  Where "a judgment of a state court rests on a state law ground that is both independent' of the merits of the federal claim and an 'adequate' basis for the court's decision," the claim is procedurally barred.  *Harris v. Reed*, 489 U.S. 255, 260–61 (1989).  It is important to note that the only claim properly before this Court is Herring's § 2254 petition challenging his 2018 sentence, *not* any ineffective assistance of counsel challenges to Herring's previous convictions or sentences.  *See Nealy v. Artest*, No. 08-cv-3482 (JFB), 2014 WL 726723, at *12 (E.D.N.Y. Feb. 25, 2014) (holding that where a petitioner challenged his PVFO status on the basis of a previous conviction being unconstitutional, "the petitioner's [previous] conviction [is] outside the scope of review for this Court").

When the Appellate Division affirmed the trial court's sentencing decision in the instant case, it stated that Herring was "estopped from challenging the

constitutionality of his 1976 and 1989 violent felony convictions because he did not challenge their constitutionality when they served as a predicate for his sentencing in connection with the 1996 conviction (*see* CPL 400.15[8]; 400.16[2]; *People v. Moss*, 138 A.D.3d 761, 762–63 [2016]).” *Herring*, 138 N.Y.S.3d at 149.  CPL § 400.15(8) holds that when “a finding [of PVFO status] has been entered pursuant to this section, such finding shall be binding upon that defendant in any future proceeding.” It is established in New York law that “[w]here a defendant fails to challenge the constitutionality of a prior conviction at the appropriate time . . . , he waives any future challenge to the constitutionality of the prior conviction for sentence enhancement purposes.” *People v. Odom*, 880 N.Y.S.2d 58, 58 (N.Y. App. Div. 2009). Courts in this Circuit have repeatedly confirmed that a New York court’s determination of PVFO status based on previous convictions creates a procedural bar to federal habeas review.  *See Nealy*, 2014 WL 726723, at *20 (“Because the New York Supreme Court expressly concluded that petitioner’s 1995 conviction claim was precluded by statute, it is barred from habeas review.”); *Albritton v. Comm’r New York State Dep’t of Corr. Servs.*, No. 11-cv-3482 (RRM), 2013 WL 4500736, at *7 (E.D.N.Y. Aug. 20, 2013) (“Defendant’s claim that his 1992 conviction should not have been used as a predicate for his 1995 second violent felony adjudication is purely a matter of state law and is thus not cognizable on habeas review.”).

Herring’s argument that the trial court violated CPL § 400.15(7)(b) is based in state procedural law, and he identifies no federal underpinning to the claim.  The Appellate Division applied a state procedural bar in affirming the trial court’s PVFO

designation. This leaves Herring's claim procedurally defaulted from federal habeas review.

It is true that a petitioner in federal habeas review may escape the consequences of default if they show either (1) "cause for the default and actual prejudice as result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 724. But Herring has not made either showing here.

With respect to the first possible escape from procedural default, cause and prejudice, the Supreme Court has held that "[a]ttorney error that constitutes ineffective assistance of counsel" can constitute cause. *Id.* at 753–54. However, Herring is not alleging that his most recent counsel was ineffective in this claim — rather, he is alleging that the counsel representing him in his 1996 criminal conviction was ineffective for not challenging his PVFO status, and he received no assistance of counsel at his 1989 plea. And as previously noted, this Court does not have the authority to review the performance of Herring's previous counsel.

However, even if that were the case, Herring has not shown any *prejudice*. Under *Strickland v. Washington*, prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 688, 694 (1984).[4] Herring has provided no

_____

[4] It is disputed among the circuits whether the standard of proof of prejudice necessary to overcome procedural default is the "reasonable probability" standard defined in *Strickland*, or the higher standard of "preponderance of the evidence." *Compare Joseph v. Coyle*, 469 F.3d 441, 462–63 (6th Cir. 2006) (holding that "*Strickland* prejudice . . . establishes prejudice for purposes of cause and prejudice"),

evidence, in the form of an affidavit or even as argument in his petition, that had he been properly informed that his convictions would lead to his status designation, that he would not have pled guilty to the charges he faced in 1989 or 1996. Thus, he has not shown a reasonable probability, but for attorney error, that Herring would not have been designated a PFVO.

Thus, because it is procedurally defaulted, and this Court cannot review the merits of the claim, Herring's second ground for habeas relief is denied.

### C.    Prosecutor's Comments at *Voir Dire*

Herring's third ground for relief under § 2254 is the claim that he was "denied a fair [and] unbiased jury during V[oi]r Dire proceedings." Petition at 21. In his petition, Herring asserts that the comments from the prosecutor at *voir dire* "informed" the panel that he "was incarcerated[,] prejudicing his rights under the constitution." *Id.* at 22. Herring argues that this error was particularly egregious because the judge failed to give any curative instruction and a juror from that panel ended up on the petit jury. *Id.* Herring argues this violated his rights "under the Fifth and Fourteenth Amendments, and N.Y. Constitution Article 1 §6." *Id.* The Court construes Herring's claim for relief is best understood as an allegation of prosecutorial misconduct which "so infected the trial with unfairness as to make the

---

*with U.S. v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998) ("Circuit precedent suggests that habeas prejudice may require a greater showing, namely, *by a preponderance of the evidence*, that the outcome of [the] trial would have been different . . . ." (internal quotation marks omitted)). Here, Herring fails to show prejudice even under the more lenient *Strickland* standard.

resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

While the trial court did give its reasons for not striking the panel or providing a curative instruction, the Appellate Division, in affirming Herring's conviction, simply said of this argument: "[t]he defendant's remaining contention is without merit." *Herring*, 138 N.Y.S.3d at 149.  However, even where a state court's decision lacks reasoning on its face, it still must be accorded "substantial deference." *Fischer*, 780 F.3d at 560–61.  The Supreme Court has directed federal courts sitting in habeas review "[w]here a state court's decision is unaccompanied by an explanation" to only grant relief where "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

The Second Circuit has cautioned that "[a] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (internal quotation marks omitted); *see also Rohit v. Conway*, 03-cv-1817 (SLT) (VVP), 2007 WL 1540268, at *8 (E.D.N.Y. May 24, 2007) ("On habeas review, prosecutorial misconduct warrants relief only when it amounts to a due process violation, which, this circuit has emphasized, is a high standard to overcome.").  To succeed in overturning a conviction based on a prosecutor's comments, "it is not enough . . . that a prosecutor's remarks were improper; rather, . . . constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (internal quotation marks

30

omitted).  In examining the question of prejudice to the entire trial, this Court "must consider the record as a whole . . . because a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context."  *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014).

To analyze the prejudice of the prosecutor's comments, "courts have considered, '(1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; (3) and the certainty of conviction absent the improper statements.'"  *Rohit*, 2007 WL 1540268, at *8 (quoting *Floyd*, 907 F.2d at 355).  Here, Herring argues that the prosecutor's comment during *voir dire*, when explaining the presumption of innocence, that "if [the prosecution] quit right now, he would be released," indicated that he was currently incarcerated.  ECF No. 8 at 531.  Herring submits that because one juror from the panel that heard this remark was on the final petit jury, the comment infected the integrity of the trial.  Petition at 22.

When Herring's attorney brought the issue to the attention of the trial court judge, the judge responded that it was one "interpretation of what [the prosecutor] said.  Release could be released from the charges.  It could be many other things. . . . When she said it I thought just released from the obligation to answer these charges or they would be dismissed against him."  ECF No. 8 at 544.  Unlike this Court, the trial court judge was in the room when the comments were said, was aware of how Herring looked in the courtroom and how that may have added to the context of what the prosecutor said, and heard the tone in which the prosecutor made the comments.

And under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." Thus, this Court must afford substantial deference to the trial court's conclusion that the prosecutor's comment was not misconduct at all.

However, even assuming the prosecutor's conduct suggested that Herring might be incarcerated pretrial, it does not rise to the level of "severity" needed to prevail on this claim. The context of the statement is that the prosecutor was explaining the importance of continuing to cloak Herring in the presumption of innocence unless and until she had proven his guilt beyond a reasonable doubt. *See* ECF No. 8 at 531 ("[I]f I quit right now, he would be released, he can walk right out of the courtroom, alright. And that is his presumption of innocence. And until I prove every element beyond a reasonable doubt, and that's a heavy one, he is free to go, he's innocent."). This is in stark contrast to a case like *Floyd*, where prosecutorial misconduct was found to be severe when the prosecutor repeatedly made statements in her summation which argued that "the Fifth Amendment burden of proof is a protection for the innocent and is not a shield for the guilty." *Floyd*, 907 F.2d at 351.

In addition, Herring has not shown that the prosecutor's comments increased the "certainty of conviction." *Rohit*, 2007 WL 1540268, at \*8 (quoting *Floyd*, 907 F.2d at 355). Here, there is no indication that Herring's custodial status was dwelled upon by the prosecution, or had any effect on the case at all. A single juror heard a statement at *voir dire* that may have indirectly indicated that Herring was in custody during the trial. This is unlike in *Floyd*, where "[t]he evidence against Floyd

principally turned on" the very issues the prosecution made improper statements about. *Floyd*, 907 F.2d at 356. As detailed *supra*, the jury here was presented with videos, signed confessions, and the alleged weapon recovered from Herring's own vehicle, greatly reducing the likelihood of prejudice from even a broad interpretation of the prosecutor's comment to this single juror.

For these reasons, Herring is not entitled to habeas relief on this claim.

### D.    Voluntariness of Herring's Statements

As the final ground for relief under § 2254, Herring claims that the "statements made during [his] arrest should have been suppressed by [the] trial court." Petition at 23. Herring repeats the serious allegations he made at trial about how these confessions were obtained. He asserts that when he was interviewed, he was highly intoxicated and beaten with a baton by Detective Gualtieri. *See id.* at 24. He maintains that he informed the officers of pain in his chest, and they continued questioning him after he requested an attorney. *Id.* at 25. For these reasons, he argues, his statements to the police were involuntary and should have been suppressed. *Id.*

As detailed *supra*, however, the trial court held a pretrial hearing on this very issue and did not credit Herring's allegations. In reviewing that decision on direct appeal, the Appellate Division found that

> the record at the pretrial suppression hearing demonstrated that the defendant made an intelligent, knowing, and voluntary waiver of his *Miranda* rights, and that his statements to the police were not a product of coercion. The County Court providently exercised its discretion in denying the defendant's applications, made during the trial, to reopen the suppression hearing.

*Herring*, 138 N.Y.S.3d at 148 (citations omitted).

Here, Herring does not point to any specific legal determination the state court made which was "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C § 2254(d)(1). Instead, he appears to be arguing that the State court's "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

In a § 2254 petition, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). "When the claim at hand involves the voluntariness of a confession," determinations by a State court regarding the "circumstances of the interrogation . . . are entitled to the statutory presumption of correctness that must be rebutted by clear and convincing evidence." *South v. Lee*, 13-cv-7261 (TPG), 2017 WL 4857588, at *9 (S.D.N.Y. Oct. 25, 2017). As former Justice Breyer has emphasized, "[t]he trial judge is best placed to consider the factors that underlie credibility." *Rice v. Collins*, 546 U.S. 333, 343 (2006) (Breyer, J., concurring).

Here, Herring has not presented and clear and convincing evidence that the State court erred in determining that his statements were "not the product of coercion." *Herring*, 138 N.Y.S.3d at 148. While he claims that he testified at the hearing that he was beaten with a baton and denied medical care to force coerced

confessions, *see* Petition at 25,[5] the State court credited the testifying officers when they claimed that these things did not happen. The record does not provide any ground for this Court to reject those findings, *i.e.,* to "reject the state court's credibility determination that the police officers told the truth and that the petitioner did not." *Nelson v. Walker*, 121 F.3d 828, 834 (2d Cir. 1997). While Petitioner points to the fact that he filed a complaint with the Internal Affairs Department, Petition at 25, he has not produced any evidence that the subsequent investigation into the officers' actions at his interrogation unearthed any wrongdoing. Similarly, the fact that he filed a § 1983 lawsuit against the County of Suffolk for the alleged abuse which was subsequently settled on undisclosed terms, without more, does not provide clear and convincing evidence that the State court's credibility determination was incorrect.

This case presents a similar situation to one the Second Circuit analyzed in *Nelson v. Walker*. There, the petitioner challenged a State court's determination that his statements were voluntary and therefore admissible at trial. *Nelson*, 121 F.3d at 833. In *Nelson*, the State court held a suppression hearing and "rejected Nelson's contention that his confession was the result of being threatened and beaten by the police," finding that the "police officers who testified were credible." *Id.* at 834. Here,

---

[5] In his Petition, Herring claims that he testified to these facts at the pretrial suppression hearing, rather than simply at trial itself. *See* Petition at 25. Based on the record provided to this Court, only police officers testified at the hearing, *see* ECF No. 8 at 1–254, and Herring testified to his abuse at the trial itself, *see* ECF No. 8 at 1051–91. However, even if Herring testified at the suppression hearing itself, it would not change this Court's analysis as that would imply that upon hearing the testimony of Herring and weighing it against that of the officers, the State court credited the officers.

as in *Nelson*, there are "two sides of the story, and the state court came down on the other side." *Id.* And this Court must give the state court's factual and credibility determinations "the statutory presumption of correctness." *South*, 2017 WL 4857588, at *9 (alteration omitted) (quoting *Bryan v. Lee*, No. 09-CV-9276 (ER), 2013 WL 5586312, at *8 (S.D.N.Y. Oct. 9, 2013)).

Aside from asserting that the trial court should have reopened the suppression hearing, Petition at 26, Herring has not put forth any further evidence "that the material facts were not adequately developed at the state court hearing or that the record does not fairly support the state court's factual determinations." *Nelson*, 121 F.3d at 834. Thus, this Court cannot find that the State court's determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Thus, the Court is required to deny habeas relief to Herring with respect to this claim.

## CONCLUSION

Herring has not shown that he is eligible for habeas relief under the demanding standards required by 28 U.S.C. § 2254. Accordingly, the petition is denied. Additionally, a certificate of appealability will not issue, because Herring has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal taken from this decision and order would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Nina R. Morrison*

NINA R. MORRISON
United States District Judge

Dated:    January 28, 2025
          Brooklyn, New York